ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.*
McCONNELL.

Opinion delivered April 7, 1913.

1. EVIDENCE—QUESTION FOR JURY.—In an action for damages for the negligent killing of witness's husband, it is proper to submit the question to the jury, when witness's testimony, while improbable, can not be said to be impossible or contrary to the physical facts. (Page 550.)

2. APPEAL AND ERROR—INCOMPETENT TESTIMONY—ERROR CURED HOW.—When incompetent testimony is admitted over defendant's objections, the error thereby committed may be cured by instructions of the court. (Page 551.)

3. RAILROADS—DISCOVERED PERIL—NEGLIGENCE—BURDEN OF PROOF.—Where a person is killed by a railroad engine, and is himself guilty of contributory negligence, the burden is upon those seeking to recover for tae killing to show that the employees in charge of the engine discovered the perilous position of deceased in time to have avoided injuring him and negligently failed to use proper means to do so, and defendant is liable if either the fireman or the engineer discovered deceased's peril in time to have avoided injuring him.   (Page 551.)

4. RAILROADS—DISCOVERED PERIL—DUTY OF RAILWAY EMPLOYEES.—Where a person was killed by a railway engine, although he was himself guilty of contributory negligence, if his perilous position is discovered by the fireman in time to have avoided the injury, and the latter fails to communicate his discovery to the engineer, and his failure was the proximate cause of the injury, the defendant railroad company is liable.   (Page 552.)

5. RAILROADS—DISCOVERED PERIL—BEHAVIOR OF DECEASED.—Where deceased is killed by a railway engine while crossing a bridge in company with his wife, an instruction that, if, after the discovery by him of his danger, he attempted to save his wife, and in so doing, the emergency considered, he acted as an ordinarily prudent man would have done under the circumstances, he was guilty of no negligence that could be called the proximate cause of his death, is not erroneous, where the court told the jury in other instructions that there could be no recovery unless the negligence of defendant's servants, after discovering the peril of deceased, was the proximate cause of his death.   (Page 553.)

Appeal from Pulaski Circuit Court; *Guy Fulk,* Judge; affirmed.

*S. H. West* and *Bridges & Wooldridge,* for appellant.

Appellant owed deceased no duty further than not to injure him after his peril was actually discovered by the trainmen, and if, by the exercise of ordinary care after discovering his peril, they could not have prevented the injury, appellant is not liable. On this issue the burden of proof was on the plaintiff. It is not a question of whether the trainmen had been keeping a lookout in time to have prevented the injury, but whether they saw him in time to have done so. 152 Fed. 686; 173 Fed. 753; 174 Fed. 597.

There can be no recovery for an injury, where the

negligence of the injured party is one of the proximate causes directly contributing to the result, even though the negligence of the defendant also contributed thereto. 144 Fed. 47; 155 Fed. 22; 150 U. S. 248. See also 76 Ark. 14; 82 Ark. 525; 83 Ark. 301; 93 Ark. 24; 97 Ark. 564; 99 Ark. 584; 101 Ark. 532; 96 Ark. 366; 181 Fed. 95; 167 Fed. 675.

The fireman and engineer were positive that they did not see these parties on the trestle, and the testimony of Mrs. Zeisler as to the fireman seeing her is both unreasonable and contrary to the physical facts. There was, therefore, no substantial testimony to sustain the verdict. *Supra;* 79 Ark. 608; 76 S. W. (Mo.), 684, 688; 190 Fed. 316; 128 S. W. 890; 141 Ill. App. 174; 1 C. Rob. 252; 145 N. Y. 540; 40 N. E. 246; 64 App. Div. 95; 71 N. Y. S. 721; 137 Mo. App. 47, 119 S. W. 328; 37 Ore. 74, 60 Pac. 907; 121 Mo. App. 92; 51 La. Ann. 178, 24 So. 771; 85 Ia. 167, 52 N. W. 119; 108 Wis. 57; 129 Fed. 715, 721; 15 Cal. 638, 645.

*Asa Gracie* and *Mehaffy, Reid & Mehaffy,* for appellee.

Counsel review the testimony and contend that the evidence is sufficient to sustain the verdict, and that it is legally sufficient to sustain the finding that the engine could have been stopped or slackened in time to have avoided injuring the deceased.

Smith, J. The complaint in this cause alleged that on Saturday night, April 30, 1910, about 8 o'clock, Fred Zeisler, to compensate whose death this suit is brought, with his wife, together with another gentleman and his wife, were walking in an easterly direction towards Rob Roy, Ark., across defendant's railroad bridge, which spans Plum Bayou, when one of defendant's engines negligently, carelessly, wrongfully and wilfully and without giving any warning or notice whatever, ran against and over the deceased, Fred Zeisler, wounding him, from which injuries, caused by the negligence of the defendant, he died in a short while. The administrator sues

for damages in the sum of $5,000 for pain and suffering and for $25,000 to compensate the loss of contributions to deceased's next of kin. The complaint further alleged that defendant was having a bridge constructed across the Arkansas river near Plum bayou by the Missouri Valley Bridge & Iron Company; and that deceased had been employed by the bridge company on this bridge; and that he and other employees were accustomed to use the bridge over the bayou when crossing it; and that this custom was known to and acquiesced in by the railroad company; and that the operatives of the engine which struck the deceased knew of this custom at the time, and the complaint further alleged that the engineer not only knew that pedestrians crossed the bridge at all hours, but that the engineer actually knew of the presence of the deceased and his companions on the bridge in time to have avoided injuring them after discovering their peril and that the engine was being run at that time at a dangerous rate of speed, and that it was not equipped with the proper headlight as required by the law.

The answer denied all the material allegations of the complaint and denied that defendant had knowledge of any custom of pedestrians to cross the bridge or that there was any such custom. It alleged that deceased and his companions were trespassers upon the bridge and that the railroad company was not only under no obligation to be aware of their presence but that the operatives of the train were not aware of their presence. Defendant denied that the engine was being run at a dangerous rate of speed or that it was guilty of any negligence in failing to have the engine equipped with a 1,500 candle power headlight as required by law. It alleged that deceased was guilty of the grossest negligence in being upon its bridge and it plead this negligence in bar of plaintiff's right to recover.

At the trial the plaintiff abandoned the allegations in regard to the failure of the railroad company to equip its engine with the proper headlight and did not rely

on any license to be upon its bridge, growing out of the custom of pedestrians to use it for passage across the bayou, but undertook to show that the train crew had discovered the deceased and his companions upon the bridge in time to have avoided injuring them by the exercise of ordinary care after discovering their perilous position. The case was tried upon the issue of discovered peril.

The trestle across the bayou was 330 feet long and was something more than twenty feet high. Deceased was about one-third of the way across the trestle at the time he was struck and his wife was the only party who escaped injury. As soon as deceased saw that the engine was about to strike them, he began to assist his wife to a place out of danger. She testified that he picked her up and let her swing to the trestle; that she swung down below the trestle to the ties; and that the engine struck him and knocked him off, inflicting injuries from which he died after suffering greatly for half an hour. The other man was slightly injured and his wife was killed.

The right to recover rests upon the evidence of Mrs. Zeisler, and, while her story does appear to be improbable, we can not say that it is impossible or contrary to any physical fact, and her statement, which was weighed by the jury, made a question of discovered peril, which was properly submitted to the jury. It appears that the engine was being used for ditching and construction purposes and that at the time of the injury it was being returned to Pine Bluff for repairs, although its air equipment was in first-class order, and it was equipped with only a 150-candle power electric headlight. Mrs. Zeisler testified that when the engine came upon the trestle she saw the fireman standing at his window, looking straight ahead, and she is not only positive that she saw the fireman, but she is also positive that he was looking towards her as the engine came upon the trestle, at a distance of about 225 to 250 feet. The railroad track for some distance east of the trestle was straight and

level, and the fireman and the engineer both testified that about 200 yards from the trestle they had checked the speed of the engine on account of two cows crossing the track just ahead of the engine. The engine, however, was not stopped as the cows got out of the way, but its speed was reduced to about fifteen miles per hour and immediately the engine increased its speed until at the time it crossed the bridge it was going at the rate of about eighteen or twenty miles per hour. The evidence is conflicting as to the speed of the train and as to the distance within which it might have been stopped, and there is also a conflict as to how far in advance of the engine its headlight casts its light, while Mrs. Zeisler testified that the headlight was not burning. The men upon the engine all deny that they saw the deceased or that they could have seen him with the light which they had in time to have avoided striking him, considering the speed at which they were traveling.

The engineer testified that he crossed the bridge at 7:51 p. m., and that it was too dark to have seen without the headlight and he and the fireman testified that there were no lights upon the engine which would have enabled Mrs. Zeisler to see the fireman standing at his window. This injury occurred at twilight, and Mrs. Zeisler testified there were lights inside the cab of the engine, which enabled her to see the fireman as he looked ahead out of his window, and we can not say that her story is a physical impossibility or contrary to any law of nature. *St. Louis S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215. Besides there were contradictions in the evidence of the engineer and fireman which must have materially affected the value of their evidence before the jury.

Appellant complains of the action of the court in permitting Mrs. Zeisler to say that she and her husband and their companions had gone upon the trestle for the purpose of going to the postoffice to get the mail and to make the following answers:

Q.  And you had to cross it in order to get to the postoffice to get your mail?

A.  Yes, sir.

Q.  There was no other way by which you could go to the postoffice to get your mail?

A.  No, sir.

These questions and answers were improper and should have been excluded, but any error in their admission was cured by the instructions of the court which told the jury as a matter of law that deceased was guilty of contributory negligence and that there could be no recovery unless his peril was discovered in time to have avoided the injury by the exercise of ordinary care. The instruction upon that question, given at the request of defendant, is as follows:

"3.  You are instructed that from the proof in this case, Fred Zeisler was, at the time of the injury, a trespasser upon the trestle of defendant. The undisputed proof shows that said trestle was constructed solely for the running of the cars and trains of defendant, and the fact that persons did walk upon it, however frequently, would not change its character and convert it into a highway for footmen. The court further instructs you that the said Fred Zeisler was, at the time of the injury, in a place of danger, and in so being was guilty of contributory negligence, and the plaintiff can not recover damages on account of his death, unless you believe from the evidence that the trainmen either injured the said deceased wantonly, maliciously or intentionally, or failed to exercise ordinary care to prevent the injury after discovering his peril, or were guilty of negligence in avoiding injuring him after discovering his peril.

"It is not sufficient, the court tells you, to show that the trainmen in charge of the train, could have by the use of ordinary care, discovered the peril of said Fred Zeisler, but it must be shown from the evidence that they did actually discover his peril in time to avoid his injury, and the burden of proof is upon the plaintiff, before he can recover, to show that the engineer or fireman upon

the train of defendant causing the injury, discovered the said Fred Zeisler upon the trestle and his perilous condition in time to avoid injuring him, and wilfully and recklessly injured him or failed to exercise ordinary care.''

Defendant asked a number of other instructions to the effect that the jury must find that the engineer was actually aware of the danger of the deceased in time to have avoided injuring him by the exercise of ordinary care after discovering his peril, but these instructions were modified by the court, and, as given, told the jury that the defendant would be liable if either the engineer or the fireman discovered the deceased's peril in time to avoid injuring him. The modification was proper for the defendant is as much responsible for the negligence of its fireman as it is for that of its engineer. *St. Louis, I. M. & S. Ry. Co.* v. *Watson,* 97 Ark. 564.

It is true, the fireman could have avoided the injury only by communicating his discovery to the engineer, but he should have done this, and if he negligently failed to do so, and his failure was the proximate cause of the injury, the defendant is liable.

Defendant complains of instruction No. 4, given at the request of plaintiff:

''The jury are instructed that in the face of sudden, unexpected and deadly danger, a person is not expected or required to be cool and collected, and to act with perfect prudence and deliberate judgment; in such case he is only required to use such degree of prudence and judgment as ordinarily careful and prudent men would be likely to exercise under the same or similar circumstances. And if the jury believe from the evidence that the deceased used ordinary care and prudence to avoid the accident when he became aware of his danger, he lost his own life in an effort to rescue his wife from danger, and in so doing he used such care as men of ordinary prudence under like circumstances would be likely to use to avoid or escape injury, then his negligence, if any, did not contribute to the injury.''

This instruction, if it stood alone, might be said to be misleading and erroneous, but it should be read in connection with all the other instructions and these other instructions told the jury in various ways that there could be no recovery, unless they found that the negligence of defendant's servants after discovering deceased's peril was the proximate cause of the injury, and this instruction contains nothing to the contrary. Read in the light of all the instructions, the substance and general purport of which is stated above, we understand this instruction to mean that the right of recovery is not dependent upon deceased's conduct after he discovered his own peril if he was himself thereafter guilty of no negligent act, which was the proximate cause of his injury. In other words, that although he might have saved himself by abandoning his wife, yet his attempt to save her as well as himself would not be such negligence as could be called the proximate cause of his injury, if considering the emergency under which he acted, an ordinarily prudent man would have done the same thing.

There was no specific objection to this instruction, and given the interpretation which we think it should have, it was a proper instruction under the facts in proof. Here deceased's companion left his own wife to her fate and saved himself and deceased might have pursued the same course and have escaped with his own life, and this instruction told the jury that if deceased's attempt to save his wife cost his own life, and that action was taken in the face of sudden and unexpected peril, under such circumstances that an ordinarily prudent person similarly situated might have done the same thing, then his action in so doing was not the proximate cause of his injury. The instruction is not happily framed, but we think it contains no reversible error.

Other exceptions were saved at the trial and have been discussed by counsel and considered by the court, but we do not consider it necessary to discuss them here.

The judgment of the court below is affirmed.

KIRBY, J., dissents.